```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X      E.D. Bankr. Case
In re:                                 No. 05-1356

BAY POINT ASSOCIATES,                  MEMORANDUM AND ORDER
                                       07-CV-1492(JS)
                    Debtor.
--------------------------------X
APPEARANCES:
For Appellant:      Robert C. Yan, Esq.
                    Ted A. Berkowitz, Esq.
                    Farrell Fritz, P.C.
                    1320 Reckson Plaza
                    Uniondale, New York 11556

For Appellees:      Martin D. Finnegan, Esq.
                    Twomey, Latham, Shea, Kelly
                    Dubin & Quataravo, LLP
                    33 West Second Street
                    Riverhead, New York 11901

                    Avrum J. Rosen, Esq.
                    Law Offices of Avrum J. Rosen
                    38 New Street
                    Huntington, New York 11743
```

SEYBERT, District Judge:

Pending before this Court is Waterways Development Corporation's appeal from an order of the United States Bankruptcy Court, dated February 7, 2007, whereby United States Bankruptcy Judge Dorothy Eisenberg permissively abstained from hearing an adversary proceeding commenced by Appellant. For the reasons stated herein, the Order of the Bankruptcy Court is AFFIRMED.

BACKGROUND

I. The Facts

Appellant, Waterways Development Corporation, is the

owner of certain property located in the Town of Brookhaven, New York (the "Property"). Appellant acquired the Property in 1997 from Post Village, Inc. ("Post"), which in turn purchased the property with permission of the Bankruptcy Court from the Chapter 7 bankruptcy estate of Bay Pointe Associates ("Bay Pointe").

Appellee, the Town of Brookhaven ("Town"), is a local municipal agency in Suffolk County, New York. In 1984, the Town approved a site plan (the "Site Plan") proposed by Bay Pointe for the construction of three-story "mid-rises" on the property (the "Mid-Rises"). In 1985, the Town of Brookhaven's Planning Board granted Bay Point a height variance which enabled Bay Pointe to build the Mid-Rises. In 1986, the Planning Board granted a continuation of the variance (the "1986 Height Variance"). The 1986 Height Variance was granted and "approved for life of job."

In 1993, an involuntary bankruptcy petition was filed against Bay Point under Chapter 11 of the Bankruptcy Code. In 1994, the case was converted to a Chapter 7 proceeding, and by 1999, the bankruptcy case was closed. On or about November of 1995, the Chapter 7 Trustee conveyed the remaining parcels of the Mid-Rises to Post.

On or about January 29, 1996, Post commenced an action in state court seeking to extinguish certain covenants. The parties ultimately settled the action, and the state court "so-ordered" the

settlement on January 21, 1997 (the "State Court Order"). The day after that order was signed, the Trustee, Town, and Post settled ongoing claims in the bankruptcy court concerning the property, and on January 21, 1997, the late Chief Bankruptcy Judge Conrad B. Duberstein "so-ordered" the stipulation (the "1997 Bankruptcy Order"). The 1997 Bankruptcy Order and the State Court Order contained a nearly identical provision whereby the parties acknowledged that the site plan would be binding, as revised, between Post and the Town and Post could continue construction on the Mid-Rises without any further approval from the Town. Sometime thereafter, Appellant purchased the property with the intent of completing construction of the Mid-Rises.

In 2001, the Town Attorney for the Town of Brookhaven advised Appellant that the 1986 Variance had lapsed, and Appellant would have to apply for a new variance. Appellant disagreed, and argued that the 1986 Variance had not lapsed because it was valid "for life of job."

In July 2003, Appellant commenced an action in New York Supreme Court for the County of Suffolk seeking, inter alia, a judgement against the Town declaring that the 1986 Variance was valid for the life of the project, and that the State Court Order and the 1997 Bankruptcy Court Order allowed Appellant to continue construction on the Mid-Rises without any further approval from the

3

Town. The state court dismissed the case as not ripe for adjudication because Appellant failed to exhaust its administrative options before the Town Zoning Board of Appeals.

On April 14, 2005, Appellant filed a motion before the bankruptcy court to reopen Bay Point's bankruptcy proceeding for the purpose of enforcing the 1997 Bankruptcy Order and validating the 1986 Height Variance as to Appellant. The case was reopened on August 17, 2005. In September of 2005, Appellant commenced an adversary proceeding against the Town seeking to enforce the 1997 Bankruptcy Order and validate the 1986 Height Variance. In November of 2005, the presiding judge, the Honorable Conrad B. Duberstein, passed away. The matter was reassigned to Judge Eisenberg in December of 2005. Sometime thereafter, Appellees' filed a motion for mandatory abstention under 28 U.S.C. § 1334(c)(2), or in the alternative, permissive abstention under 28 U.S.C. § 1334(c)(1). On February 7, 2007, the Bankruptcy Court permissively abstained from hearing Waterway's adversary proceeding. In granting Appellees' motion for permissive abstention, the Court found that abstention was warranted "in the interest of justice, or in the interest of comity with state courts or respect for State law."

In determining whether abstention is warranted, a bankruptcy court may consider some or all of the following twelve

factors:

> (1) the effect, or lack thereof, of abstention on the debtor's estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered into state court with enforcement left to the Bankruptcy Court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding involves forum shopping; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.

See In re Baker, 374 B.R. 498, 505 (Bankr. E.D.N.Y. 2007).

The Bankruptcy Court found that an "overwhelming number" of the factors favored permissive abstention in this case. Waterways Development Corp. v. Town of Brookhaven (In re Bay Pointe Associates), No. 93-10535-478 at 9 (Adv. Pro. No. 05-01356-478) (E.D.N.Y. 2005). The court concluded that abstention would have no negative affect on the underlying bankruptcy estate because the case had been closed for over five years, the adversary proceeding was only remotely related to the main bankruptcy case in that the estate was paid out and the relief sought would not benefit any creditor of the estate, and interpreting the 1997 Bankruptcy Order would necessarily involve determining the effect of a local variance according to state law and local zoning regulations. The

5

Bankruptcy Court acknowledged that the adversary proceeding was a core bankruptcy proceeding because it required the court to interpret its own order, but noted that the proceeding was only core in form. The essence of the adversary proceeding required the Bankruptcy Court to resolve issues between non-debtor and non-creditor parties involving predominantly state law. Additionally, the Bankruptcy Court noted that a parallel action had been commenced in the New York State Supreme Court, Suffolk County. <u>In re Bay Pointe Associates</u>, No. 93-10535-478 at 11-12.

In addition to these factors, the Bankruptcy Court also noted that the death of Bankruptcy Judge Duberstein was an exceptional circumstance that affected the court's ability to resolve the parties' issues. It reasoned that the passing away of Judge Duberstein left it with no institutional memory of the facts that formed the basis for the 1997 Bankruptcy Order, which was entered without a hearing on record. The Bankruptcy Court opined that these exceptional circumstances also favored resolution in a state forum. <u>Id.</u> at 8.

## DISCUSSION

### I. Standard Of Review

When reviewing a bankruptcy court's decision to permissively abstain, district courts consider whether the bankruptcy court abused its discretion. <u>See</u> <u>Coker v. Pan Am.</u>

6

World Airways, Inc. (In re Pan American Corp.), 950 F.2d 839, 844 (2d Cir. 1991). A bankruptcy court abused its discretion if it based its decisions on an "erroneous view of the law" or "clearly erroneous factual findings." McCord v. Agard (In re Bean), 251 B.R. 196, 201 (E.D.N.Y. 2000).

II. The Bankruptcy Court Did Not Abuse Its Discretion

Appellant argues that the 1997 Bankruptcy Order was unambiguous and the Bankruptcy Court abused its discretion by declining to interpret the order. The Court disagrees. Although a Bankruptcy Court generally has core jurisdiction over interpretation of its own orders, see In re Millennium Seacarriers, Inc., 458 F.3d 92, 95 (2d Cir. 2006), abstention from core proceedings is left to the discretion of the Bankruptcy Court. 28 U.S.C. §1334 (c)(1); In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002).

A court need not retain jurisdiction to interpret its own order where the weight of the factors suggests that abstention is warranted in the interests of justice. Nothing in the relevant section of the United States Code suggests that the presence of an order summarily prohibits abstention; in fact, the statute provides that "nothing . . . prevents" a court from permissively abstaining. 28 U.S.C. § 1334 (c)(1)(emphasis added). The question to be determined is, more broadly, whether abstention would be in the

7

interest of justice, or in the interest of comity with state courts and respect for state laws, which is determined by weighing the aforementioned twelve factors. See In re Baker, 374 B.R. 498, 505 (E.D.N.Y. 2007).

While no factor is determinative, "abstention is particularly compelling" where the proceeding "sounds in state law and bears a limited connection to debtor's bankruptcy case." In re Titan Energy, Inc., 837 F.2d 325, 332 (8th Cir. 1988).

The Bankruptcy Court had a reasonable basis for its decision to abstain in this case. The "degree of relatedness" of the proceeding to the main bankruptcy case was minimal, and abstention would not negatively affect the administration of the estate. See In re Baker, 374 B.R. at 505. A decision as to whether Appellant could continue construction on the Property without the Town's approval would affect only Appellant and Appellees, neither of whom are a debtor or creditor of the estate. While abstention is warranted even where the parties' claims would have some "peripheral impact" on the administration of the debtor's estate, In re Titan Energy, Inc., 837 F.2d 325, 332 (8th Cir. 1988), here, Appellant's claims would have no impact whatsoever. The relief sought by Appellant would not realize any monies for the benefit of creditors, as the estate has been paid out and Bay Point's case was closed in 1999.

The predominance of state law issues, another factor in a "particularly compelling" case for abstention, also supports the Bankruptcy Court's decision. Although the 1997 Bankruptcy Order may contain unambiguous language, the Bankruptcy Court was not unreasonable in declining to interpret it "in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334 (c)(1). Appellant seeks continued construction of three-story Mid-Rises when Appellee's regulations provide a height limit of two-and-a-half stories. Interpreting the 1997 Bankruptcy Order without incorporating and enforcing the 1986 Height Variance would not provide Appellant with adequate relief. The Bankruptcy Order makes no direct reference to this Variance, but rather reads,

> Brookhaven [Appellee] acknowledges that the site plan of the "Property" as originally approved by the Planning Board of the Town of Brookhaven and as subsequently revised and approved is still valid, in effect and is binding on both Brookhaven and on Post. In addition Brookhaven acknowledges that Post may commence and/or continue construction on the Property pursuant to the aforementioned site plan without any further Town of Brookhaven Planning Board approvals.

The Court would be called upon to decipher the intentions of the parties in referencing the Site Plan. Appellee never extended a height variance directly to Appellant. The parties have also disputed the validity of the Variance for perpetuities purposes and whether timely renewal was required in order for the Site Plan to be binding on the parties. The Bankruptcy Court lacks familiarity

9

with the Property, the parties, or the circumstances leading to the 1997 Bankruptcy Order to make these determinations. A state forum would be familiar with and interested in hearing these claims, particularly since the language of the 1997 Bankruptcy Order was substantially identical to a provision in the State Court Order.

Interpreting the 1997 Bankruptcy Order would therefore constitute a core proceeding only in form. Substantively, it would not involve rights created by bankruptcy law or issues unique to a bankruptcy case. See In re Green, 200 B.R. 296, 298 (S.D.N.Y. 1996) ("A proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, is a core proceeding.").

Moreover, the Bankruptcy Court's interpretation of the Order would not serve the interests of justice in this case. The "judicial economy and convenience" that ordinarily results from a court's interpretation of its own orders is primarily "due to its familiarity with the facts." In re Millenium, 458 F.3d at 97 (2d Cir. 2006)(emphasis added). Here, the Bankruptcy Court was left with no record or recollection of the facts due to the death of the presiding judge. The Bankruptcy Court is therefore not "undoubtedly the best qualified" to enforce the language of the Order, which was a stipulation between the parties. Texaco Inc. v. Sanders (In re Texaco), 182 B.R. 937, 947 (Bankr. S.D.N.Y.

1995).  In fact, the Bankruptcy Court may be less qualified than the New York Supreme Court, where Appellant commenced a parallel proceeding.  Contrary to Appellant's assertion that the court has an obligation to enforce any order on point, a newly-assigned judge is "free to revisit [a] court's exercise of jurisdiction."  <u>In re Millenium</u>, 458 F.3d at 97 n.3.

This Court does not find that the Bankruptcy Court abused its discretion by declining to interpret the 1997 Bankruptcy Order because the Bankruptcy Court cited sufficient factors favoring abstention and reasonably concluded that extraordinary circumstances vitiated the benefits to be gained by interpreting the 1997 Bankruptcy Order in this case.

## <u>CONCLUSION</u>

For all of the reasons set forth herein, the Order of the Bankruptcy Court is AFFIRMED.

SO ORDERED

<u>/s/ JOANNA SEYBERT     </u>
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          March 19, 2008